IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES R. WELSH, | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | Civ. No. 04-1385 |
| | ) | |
| MEISTERMATIC, INC., | ) | |
| An Ohio Corporation, | ) | |
| | ) | |
| **Defendant** | ) | |

## OPINION AND ORDER

Plaintiff James R. Welsh has sued his former employer, Meistermatic, Inc., an Ohio

corporation located in Cleveland, Ohio under the Americans With Disabilities Act ("ADA"), 42

U.S.C. § 12101 *et. seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 Pa..C.S. § 951 *et.*

*seq.*, and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001

*et. seq..* Plaintiff alleges in his Complaint that Defendant Meistermatic violated the ADA and the

PHRA when it discriminated against him by denying him his right to health insurance benefits

under the Meistermatic health insurance plan, retaliated against him by concocting false

allegations in several performance evaluations and employee warnings, "built a file" containing

these false allegations so that his claims for unemployment compensation would be denied, and

then terminated his employment. Complaint, ¶¶ 38 and 44. Plaintiff further alleges that

Defendant violated the PHRA and ERISA when it discriminated against him by not permitting

him to enter the Meistermatic health insurance plan, and then retaliated against him by

terminating his employment. Complaint, ¶¶ 45 and 47.

Pending before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint in its

entirety (Doc. #5). Defendant first argues that "Plaintiff's Complaint does not allege any facts

demonstrating that this Court has personal jurisdiction over Meistermatic for purposes of his

claims under the ADA or the PHRA." Motion to Dismiss, ¶ 2. Defendant also argues that venue

does not properly lie in this District with respect to any of Plaintiff's claims. Id. Finally,

Defendant argues that Plaintiff has failed to state a claim upon which relief can be granted under

the PHRA because Meistermatic does not employ at least four employees in Pennsylvania, as

required by 43 Pa.C.S.§ 954(b). Motion to Dismiss, ¶ 3. For the reasons set for below,

Defendant's motion to dismiss Plaintiff's Complaint is denied as to Plaintiff's ADA and ERISA

claims against it and granted as to Plaintiff's PHRA claim against it.

## I. LEGAL ANALYSIS.

### A. Personal jurisdiction issue.

We turn first to the issue of whether this court has personal jurisdiction over Meistermatic

for purposes of Plaintiff's claims under the ADA or the PHRA. A federal court sitting in

diversity may exercise personal jurisdiction over a non-resident defendant to the extent

permissible under the law of the forum state, here Pennsylvania. Fed. R. Civ. P. 4(e); Pennzoil

Prod. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 200 (3d Cir.1998) (citation omitted).

Notably, "[w]hen a defendant raises the possible lack of personal jurisdiction, the plaintiff

bears the burden of demonstrating that it exists and 'present[ing] a prima facie case for the

exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts

between the defendant and the forum state'." Malaysia Intern. Shipping Corp. v. Sinochem

Intern. Co. Ltd., 436 F.3d 349, 364 (3d Cr. 2006), quoting, Mellon Bank (East) PSFS, Nat'l Ass'n

v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (internal quotation marks omitted). Further, when

personal jurisdiction is attacked via a Rule 12(b)(6) motion, as it is here, the Court must resolve

disputed issues of fact in favor of the plaintiff. Carteret Savs. Bank, F.A. v. Shushan, 954 F.2d

141, 142 n. 1 (3d Cir.), cert. den'd, 506 U.S. 817 (1992).

      1. Pennsylvania's long-arm statute, 42 Pa.C.S.A. § 5322.

      Turning to 42 Pa.C.S.A. § 5322, Pennsylvania's long-arm statute, Plaintiff argues first that pursuant to § 5322 (a)(3), Defendant has subjected itself to the jurisdiction of this Court by its conduct. Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss ("Plaintiff's Opposition Brief), p. 11. 42 Pa.C.S.A. § 5322(a)(3) states that "[a] tribunal of this Commonwealth may exercise personal jurisdiction over a person . . . who acts directly or by an agent, as to a cause of action or other matter arising from such person: (3) Causing harm or tortious injury by an act or omission in this Commonwealth." 42 Pa.C.S.A.§ 5322(a)(3). In support of this position, Plaintiff states in his Declaration that "[o]n October 31, 2002, [Joni] Burzogany [a Vice-President at Meistermatic] phoned me at my home in Pennsylvania, informed me that, contrary to Meistermatic's previous representations, 'medical insurance coverage was not part of [my] employment agreement,' then proceeded to call me 'a liar,' that '[my] days are numbered here [at Meistermatic],' and hung up on me when I protested." Welsh Declaration, ¶ 17. In a nutshell, Plaintiff's position is that it was pursuant to this phone call, initiated by Joni Burzogany in Ohio to Plaintiff in Pennsylvania, that Defendant "committed the unlawful acts of denying Welsh his right to health coverage and retaliation for his requesting those benefits by initiating his employment termination" and subjected itself to the jurisdiction of this Court pursuant to 42 Pa.C.S.A. § 5322(a)(3). Plaintiff's Opposition Brief, p. 11.

      Since Burzogany's telephone call originated in Ohio, we hold that Burzogany's telephone call was not "an act . . . in this Commonwealth" and therefore, Defendant was not subject to the jurisdiction of this Court pursuant to 42 Pa.C.S.A.§ 5322(a)(3). We further find, however, that the applicable section is 42 Pa.C.S.A. § 5322(a)(4). This subsection provides that: "[a] tribunal of

this Commonwealth may exercise personal jurisdiction over a person . . . who acts directly or by an agent, as to a cause of action or other matter arising from such person: (4) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth." Having so held, however, our inquiry is not over.  The United States Court of Appeals for the Third Circuit explained in Pennzoil Products Co. v. Colelli & Associates, Inc., 149 F.3d 197 (3d Cir. 1998): "[a]lthough we conclude that Pennsylvania's long-arm statute extends jurisdiction to [the defendant], we must still determine whether the strictures of constitutional due process (i.e. minimum contacts and notions of 'fair play and substantial justice') would be observed by asserting jurisdiction.  We cannot presume that jurisdiction is proper simply because the requirements of a long-arm statute have been met." Id. at 200. See also IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998) (explaining "[f]irst, the court must apply the relevant state long-arm statute to see if it permits the exercise of personal jurisdiction; then, the court must apply the precepts of the Due Process Clause of the Constitution.").

The due process inquiry turns on the defendant's contacts with the forum state.  Personal jurisdiction may be either general or specific, and both the quality and quantity of the necessary contacts differs according to which sort of jurisdiction applies. In the instant matter, Plaintiff contends that this Court has both general and specific personal jurisdiction over Defendant Meistermatic. Plaintiff's Opposition Brief, pp. 5-15. Thus, we turn next to whether, under the facts of this action, this Court has either general or specific personal jurisdiction over Defendant.

2. General personal jurisdiction.

General personal jurisdiction arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated.  Due process for general personal jurisdiction requires a showing that the defendant has had continuous and systematic contacts with the forum

4

state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 412-13, 414 n. 8 and 9,

104 S.Ct. 1868 (1984). Meistermatic contends that we do not have general personal jurisdiction

over it because: (1) it is not incorporated in Pennsylvania; (2) it is not registered to conduct

business in Pennsylvania; and (3) it does not engage in "continuous and systematic" activity

within Pennsylvania. Defendant's Supporting Brief, p. 5. Concerning its position that it does

not engage in "continuous and systematic" activity within Pennsylvania, Defendant further

elaborates that "it sells certain parts to two companies located in Pennsylvania; however, the

parts are sold in response to requests (purchase orders) that Meistermatic receives from these

Companies in Ohio, and the parts are sold FOB Meistermatic's Cleveland, Ohio plant. Under the

Uniform Commercial Code, this means that title passes upon tender to these companies in Ohio.

. . . [O]ne of these companies actually directs Meistermatic to invoice it for the parts in Fort

Myers, Florida." Id. at p. 6 (internal citations omitted).

To the contrary, Plaintiff contends in his Opposition Brief (including footnotes):

[b]ased on the foregoing, this Court may exercise general jurisdiction upon
Meistermatic. First, Meistermatic initiated and conducted a two and one half year
relationship with Welsh, a Pennsylvania domiciliary, from February 2001 through
July 26, 2003. Meistermatic is a manufacturing company. Welsh is a senior
management official of the Company in charge of all quality issues related to the
products manufactured by Meistermatic. Welsh performed major Meistermatic
operational duties from his home in Pennsylvania including the creation of
programs and initiatives that improved the quality of products turned out by
Meistermatic, streamlined the Company's operations, and saved significant costs
to the Company. Thus Meistermatic, via Welsh's work in Pennsylvania, carried
on a continuous and systematic part of its general business operations in the
Commonwealth, namely its quality control function which affects its entire
manufacturing operation that is the essence of Meistermatic's business. This is
further supported by the numerous phone calls Welsh received from Meistermatic
at his home in Pennsylvania related to Meistermatic's business. Thus, this two and
one half year continuous relationship between Meistermatic and Welsh, initiated
by Meistermatic when it contacted him (in Pennsylvania) and hired him (in
Pennsylvania), along with the import and extent of the work he performed in
Pennsylvania, firmly establishes general jurisdiction over the Company.

As well, Meistermatic designed, manufactured, sold, and solicited, *on a continuing basis*, component parts for diesel locomotive engines for at least two companies in Pennsylvania.[1] Additionally, Kurnava, Burzogany, and her husband, the three highest ranking officers of Meistermatic, went into Pennsylvania at least four times a year, each year, to discuss design and production issues, and solicit business here. The quantum of contacts is not relevant to the general jurisdiction analysis, but the threshold question is whether there is a carrying on of a continuous and systematic part of its general business. . . .

In the instant case, Meistermatic has availed itself of the privilege of acting in Pennsylvania as it solicits, sells, designs, and manufactures products to Pennsylvania on an on-going basis, albeit on a smaller scale than its operations in Ohio.[2]

Finally, exercise of general jurisdiction is valid because Meistermatic consented to Pennsylvania jurisdiction when it did not challenge PHRC jurisdiction over Welsh's discrimination complaint filed with it and the EEOC. As this complaint

------------

[1]Meistermatic argues that selling its products FOB its plant in Cleveland, Ohio, permits it to avoid jurisdiction of Pennsylvania as title is taken in Ohio. As discussed above, "continuous and systematic part of its general business" is the touchstone here. See 42 Pa.C.S. § 5301 (a)(2)(iii). Notwithstanding this, however, the United States District Court for the Western District of Pennsylvania has carved out an exception for "indirectly shipped" into Pennsylvania as in this situation. See Testa v. Janssen, 482 F. Supp. 1195, 1198 (W.D. Pa. 1980) (Ziegler, J. ). "A foreign corporation who ships merchandise "indirectly" ships merchandise into the Commonwealth when it "could reasonably foresee that its product would be sold . . . to outlets around the country, and that Pennsylvania would be one such market." Despite the FOB labeling, Meistermatic could reasonably foresee that its locomotive component parts would be sold to outlets across the country and that Pennsylvania would be one such market. Indeed the parts were purchased by two companies in Pennsylvania through Meistermatic's own admission. See Burzogany Decl. ¶ 5.

[2]As well, if any legal action arose related to the products sold to the Pennsylvania companies, those companies would almost certainly file suit in a Pennsylvania court and so Meistermatic is undoubtedly under the expectation of the possibility of being haled into court in Pennsylvania. This situation would be squarely on point with the facts of the Pennzoil case. In that case, a Pennsylvania oil refinery sued Ohio corporations that sold solvent to oil producers in Ohio that subsequently sold their crude oil to the refinery which was damages by silicon in the solvent. The Court here established minimum contacts of the Ohio defendant with Pennsylvania via 42 Pa.C.S. § 5322(a)(4), that personal jurisdiction extends to any person who causes harm of tortious injury in the Commonwealth by act or omission outside the Commonwealth.

has been dismissed, Welsh could either file suit in federal court or would be entitled to file suit in the applicable Court of Common Pleas in Pennsylvania. 43 Pa.C.S. § 959. Thus, Pennsylvania has exercised its jurisdiction over Meistermatic, already, related to Welsh's PHRA claims. Moreover, by responding to Welsh's discrimination complaint, Meistermatic has "purposefully availed itself of the privilege of conducting business within the forum State thus provoking the protection and benefits of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228 (1958).

Plaintiff's Opposition Brief, pp. 8-10 (footnotes included).

Thus, the issue is whether Plaintiff has sufficiently established that Meistermatic has engaged in "continuous and systematic" activity within Pennsylvania such that Plaintiff has satisfied his burden of establishing that this Court has general personal jurisdiction. "This court has held that the plaintiff must show significantly more than mere minimum contacts to establish general jurisdiction. The nonresident's contacts must be continuous and substantial." Provident Nat. Bank v. California Sav. and Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987). See also Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 588-89 (3d Cir. 1982), quoting Compagnie des Bauxites de Guinea, 651 F.2d at 890 (Gibbons, J., dissenting) ("[o]bviously this is a much higher threshold to meet for the facts required to assert this 'general' jurisdiction must be 'extensive and persuasive.'").

This Court finds, based upon the following statements in Plaintiff's Declaration, that Plaintiff has sufficiently established that Defendant has engaged in continuous and systematic activity within Pennsylvania. Therefore, this Court has general personal jurisdiction over Defendant. The Welsh Declaration states:

11. Meistermatic sells component parts for diesel locomotive engines to several companies in Pennsylvania on a continuing basis, designs and manufactures those parts on a continuing basis, and sends representatives into Pennsylvania to solicit business and discuss design and production issues on a continuing basis, said representatives being Kurnava, the President, Burzogany, the Vice-President, and Meistermatic's General Manager, Thomas Burzogany, Burzogany's husband.

7

Declaration of James R. Welsh, ¶¶ 6-9 and 11.  Accordingly, Defendant's motion to dismiss

Plaintiff's ADA and PHRA claims on the basis of lack of jurisdiction is denied.

3. Specific personal jurisdiction.

Having found that this Court has general personal jurisdiction over Defendant, it is not

necessary to examine whether we have specific personal jurisdiction over Defendant and we elect

not to do so.

**B. Venue issue.**

We turn next to the issue of venue. Defendant argues that this Court is an improper venue

for all of the claims brought against it by Plaintiff.

1. ADA claim.

Determining proper venue for claims brought under the ADA is governed by 42 U.S.C.

§ 2000-e-5(f)(3). 42 U.S.C. § 2000-e- 5(f)(3) states that an ADA case may be brought (1) in any

judicial district in the state in which the unlawful employment practice is alleged to have been

committed, (2) in the judicial district in which the employment records relevant to such practice

are maintained and administered, or (3) in the judicial district in which the aggrieved person

would have worked but for the alleged unlawful employment practice, but if the respondent is

not found within any such district, such an action may be brought within the judicial district in

which the respondent has his principal office. Id.  Here, Plaintiff states in his Declaration that "I

performed a significant portion of my job duties [as Meistermatic's Quality Control Manager]  at

my home in Pennsylvania, including but not limited to the creation of programs and

initiatives . . ." Plaintiff's Declaration, ¶ 8. Accordingly, we hold that this district is a "judicial

district in which the aggrieved person would have worked but for the alleged unlawful

employment practice." Defendant's motion to dismiss Plaintiff's ADA claim on the basis of

improper venue is denied.

2. ERISA claim.

29 U.S.C. § 1132(e)(2) contains the applicable venue provision for claims brought under

ERISA. This subsection provides that: "[w]here an action under this subchapter is brought in a

district court of the United States, it may be brought in the district where the plan is

administered, where the breach took place, or where a defendant resides or may be found, and

process may be served in any other district where a defendant resides or may be found." 29

U.S.C. § 1132(e)(2). In determining venue, "a defendant 'may be found' in a district with which

it has minimum contacts as that term has been employed in *International Shoe* and its progeny."

Waeltz v. Delta Pilots Retirement Plan, 301 F.3d 804, 811(7th Cir. 2002). Plaintiff argues that

ours is the district "where the breach took place" and "where a defendant . . . may be found."

Plaintiff's Opposition Brief, pp. 16-17.

There is a split of authority as to whether a breach takes place where the decision is made

to deny benefits under a plan or where the benefits would have been received. While the United

States Court of Appeals for the Third Circuit has not ruled on this issue, the majority of courts

examining this issue have found that "in light of both ERISA's policy in favor of free access to

the federal courts and the presumption in favor of the plaintiff's choice of forum when that forum

is her home," a breach takes place where the plaintiff was to receive his benefits. See Keating v.

The Whitmore Manufacturing Co. et al., 981 F. Supp. 890, 893 (E.D. Pa. 1997) (discussing

cases). We agree with the majority view that a breach occurs in the district where a plaintiff was

to receive his benefits, which in the instant case would be in this District, the Western District of

Pennsylvania, where Plaintiff and his wife resided, Plaintiff performed a substantial part of his

job for Defendant, Plaintiff was located at the time he was terminated by Defendant, and Plaintiff

and his wife's health care providers were located.  Defendant's motion to dismiss Plaintiff's

ERISA claim on the basis of improper venue is denied.

       3. PHRA claim.

       Defendant also argues that venue is improper for Plaintiff's PHRA claim. The general

venue provision, found at 28 U.S.C. § 1391(b), is applicable to this claim. Subsection (b)(2)

states that a claim may be brought in "a judicial district in which a substantial part of the events

or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). We find that under the

facts of this case, a substantial part of the events giving rise to Plaintiff's PHRA claim occurred

in this judicial District. Therefore, Defendant's motion to dismiss Plaintiff's PHRA claim on the

basis of improper venue is denied.

## C. Plaintiff's PHRA claim.

       43 P.S. §954(b) defines the term "employer" under the PHRA as an entity "employing

four or more persons within the Commonwealth." Defendant argues that Plaintiff's PHRA claim

against it must be dismissed because it does not employ 4 employees in Pennsylvania.  In

response, Plaintiff argues that Defendant does employ 4 or more employees in Pennsylvania.

Plaintiff's Opposition Brief, p. 18.  In support of his position, Plaintiff first contends that

"Meistermatic responded to Welsh's PHRA complaint that it employed 34 persons in the

Commonwealth of Pennsylvania." Id., citing, May 1, 2004 position statement by Defendant

written to EEOC. Second, Plaintiff argues that he should be counted as an employee employed

by Defendant in Pennsylvania since he did a significant amount of his work for Defendant in

Pennsylvania and that Kurnava, Burzogany and Burzogany's husband also should be counted as

employed within the Commonwealth because they went into Pennsylvania "as representatives of

Meistermatic to design, solicit, and plan manufacturing of the component locomotive parts with

the two [Pennsylvania] companies." Id.

We agree with Defendant that Plaintiff's PHRA claim must be dismissed for failure to state a claim upon which relief can be granted. First, in the May 1, 2004 letter to the EEOC, Defendant simply states that it has 34 employees. It does not state that these employees are located in Pennsylvania. Therefore, this document is not evidence that Defendant employed 34 persons within the Commonwealth of Pennsylvania. Second, the actions of Kurnava, Burzogany and Burzogany's husband going into Pennsylvania "as representatives of Meistermatic to design, solicit, and plan manufacturing of the component locomotive parts with the two [Pennsylvania] companies," does not render them persons employed by Defendant in the Commonwealth of Pennsylvania. Therefore, assuming *arguendo* that Plaintiff qualifies as a person employed by Defendant within the Commonwealth of Pennsylavnia, he is the only such employee. Defendant's motion to dismiss Plaintiff's PHRA claim for failure to state a claim upon which relief can be granted is granted.

**D. Conclusion.**

Defendant's Motion to Dismiss is denied as to Plaintiff's ADA and ERISA claims against it and is granted as to Plaintiff's PHRA claim against Defendant. An appropriate Order follows.

## ORDER

AND NOW, this _10 th_ day of May, 2006, it is hereby ORDERED, ADJUDGED, and

DECREED that Defendant Meistermatic, Inc.'s Motion to Dismiss (Doc. #5) is DENIED as to

Plaintiff's ADA and ERISA claims against Defendant and is GRANTED as to Plaintiff's PHRA

claim against Defendant.  Plaintiff's PHRA claim against Defendant Meistermatic, Inc. is hereby

dismissed.

_Maurice B. Cohill, Jr._
Maurice B. Cohill, Jr.
Senior District Court Judge