IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES O. ZEBLEY, JR.,<br>Bankruptcy Trustee for the Estate<br>of James R. Welsh,<br>　　　　Plaintiff<br><br>v.<br><br>MEISTERMATIC, INC.,<br>An Ohio Corporation,<br>　　　　Defendant | Civil Action No. 04-1385<br>JUDGE MAURICE B. COHILL, JR. |

## AMENDED COMPLAINT

### I.　　PRELIMINARY STATEMENT

1.　　This complaint is filed pursuant to The Americans with Disabilities Act of 1990, 104 Stat. 327, as amended, 42 U.S.C. §12101, et seq. ("ADA"), and the Employment Retirement Security Act of 1974, 29 U.S.C. §1001, et seq. ("ERISA"), to enforce the rights of Plaintiff Charles O. Zebley, in his capacity as Bankruptcy Trustee In re: James R. Welsh and Peggy J. Welsh in the United States Bankruptcy Court for the Western District of Pennsylvania at 04-29140 BM, to injunctive relief, actual damages, punitive damages, and reasonable attorney's fees and costs by reason of Meistermatic, Inc. ("Meistermatic") violations of the respective Acts. Plaintiff is also joining a pendant state law claim of violation of the Pennsylvania Human Relations Act, 43 Pa.P.S. §951, et seq. in order to enforce his right to injunctive relief, actual damages, and reasonable attorney's fees and costs under the laws of the Commonwealth of Pennsylvania.

## II. JURISDICTION

2. This Court has jurisdiction over Defendant Meistermatic pursuant to 42 U.S.C. §12101, et seq., and 29 U.S.C. §1001, et seq.

## III. PARTIES

3. The Plaintiff, Charles O. Zebley, is acting in the capacity as Bankruptcy Trustee in the matter of In re: James R. Welsh and Peggy J. Welsh in the United States Bankruptcy Court for the Western District of Pennsylvania at 04-29140 BM. Mr. Zebley was substituted as party plaintiff in this action pursuant to Order of Court dated September 11, 2006 (Doc. 26), replacing the original plaintiff, James R. Welsh ("Welsh"), about whom the following averments concern.

4. The Defendant, Meistermatic, Inc., ("Meistermatic") is an Ohio corporation, whose address is 17202 Roseland Avenue, Cleveland, OH 44112.

## IV. FACTUAL ALLEGATIONS

5. Welsh suffers from testicular cancer ("cancer"), which substantially limits his sexual, reproductive, and genito-urinary functioning, and further, is recorded in his medical history.

6. On April 9, 2001, Welsh commenced employment in the position of Quality Manager with Meistermatic, a manufacturing company, at a salary of $42,000 per year, plus fringe benefits including but not limited to medical insurance coverage.

7. On or about April 15, 2001, Welsh underwent a physical examination, mandated by Meistermatic, during which he revealed the existence of the cancer to the medical provider conducting the examination.

8. Said medical provider then notified Meistermatic of Welsh's cancer.

9. All Meistermatic employees are entitled to receive medical insurance coverage.

10. On or about May 2001, Welsh completed application forms, provided by Meistermatic's Human Resource Manager/Controller Thomas Endemann ("Endemann"), required in order to receive medical insurance coverage and disclosed the existence of the cancer.

11. Said application forms were returned to Endemann, who reviewed them along with Meistermatic's president, Edward Kurnava ("Kurnava"), who owns substantially all of Meistermatic's stock.

12. Shortly thereafter, Endemann met with Welsh, informing Welsh that because Welsh's wife had medical insurance through her employer, Welsh did not need medical insurance coverage from Meistermatic. Endemann then asked Welsh to sign a waiver opting out of Meistermatic's medical insurance plan.

13. Welsh expressed his reservations to Endemann regarding execution of the waiver because of his concern that if his wife lost medical coverage through her employer, Welsh and his wife would be without medical insurance coverage. Endemann replied that if Welsh's wife did lose medical insurance coverage, this would be a "qualifying event" entitling him to enter Meistermatic's medical insurance plan. Welsh then executed the waiver form opting out of Meistermatic's medical insurance plan.

14. Meistermatic's management team consisted of Kurnava, Joni Buzogany ("J. Burzogany"), Vice-President and Kurnava's daughter, Thomas Buzogany ("T. Burzogany"), the Plant Manager and the husband of J. Buzogany, Endemann, and Welsh.

15. From the commencement of Welsh's employment on April 9, 2001 through September 2002, Meistermatic's management team continually told Welsh that his performance as Quality Manager was excellent and that they were especially impressed with Welsh's attention to detail. Pursuant to the foregoing, Welsh received a pay raise in April 2002 and given increased responsibilities.

16. In late September 2002, Kurnava and J. Buzogany hosted Welsh and his wife to a Cleveland Browns football game and dinner after the game. At that time, J. Buzogany told Welsh's wife that Welsh was "the Quality Manager her father was always looking for."

17. In October, 2002, Welsh informed Endemann that his wife had lost medical insurance coverage and that he needed to join Meistermatic's medical insurance program. Endemann again provided Welsh with the forms required to secure coverage, which Welsh completed, again revealing existence of the cancer.

18. Welsh returned the completed forms to Endemann, who reviewed them with Kurnava and J. Buzogany.

19. On October 31, 2002, J. Buzogany phoned Welsh, informing him that medical insurance coverage was "not part of your [Welsh's] employment agreement." When Welsh disputed this, J. Burzogany called Welsh "a liar" and hung up on him.

20. Consequently, Meistermatic did not allow Welsh medical insurance coverage under its plan, though he was entitled to this benefit.

21. On November 2, 2002, Welsh had a meeting with Kurnava and J. Buzogany at which Kurnava angrily asked Welsh "what are you [Welsh] trying to pull" and called Welsh "a con man" because Welsh was exercising his right to medical insurance coverage. Further, J. Buzogany informed Welsh that she "just completed a performance evaluation [on Welsh] that was not favorable". Welsh then received an "unsatisfactory" performance evaluation, dated November 1, 2002. See attached Exhibit "A".

22. On November 12, 2002, Welsh received an "Employee Warning Report" from J. Burzogany threatening him with termination of his employment. See Exhibit "B".

23. On January 28, 2003, Welsh received still another "Employee Warning Report" from J. Burzogany. See Exhibit "C".

24. On May 13, 2003, Welsh received a "below average" performance evaluation from J. Buzogany and Kurnava. See Exhibit "D".

25. On July 8, 2003, Welsh received another "Employee Warning Report" entitled "Final" and accusing him of insubordination. See Exhibit "E".

26. On July 15, 2003, Welsh received, yet again, an "Employee Warning Report entitled "Verbal". See Exhibit "F". At that time, Welsh was informed by J. Buzogany that she "was building a file" so that he would be denied unemployment compensation benefits when his employment was terminated.

27. All of Meistermatic's allegations contained in Exhibits "A" through "F" are false and were concocted because Meistermatic discriminated against Welsh due to his cancer and Welsh's exercising of his rights to participate in Meistermatic's medical insurance plan.

28. On July 26, 2003, J. Buzogany informed Welsh that his employment with Meistermatic had been terminated.

29. Throughout his employment with Meistermatic, Welsh could perform the essential functions of his position of Quality Manager.

30. On March 31, 2004, Welsh dual filed charges with the United States Equal Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC").

31. On June 15, 2004, Welsh received his right to sue letter. See Exhibit "G".

32. As a result of Defendant's actions, Welsh has lost his full time job, back pay, perquisites, and fringe benefits, future pay, perquisites, and fringe benefits, potential for career advancement within Meistermatic, the pay, perquisites, and fringe benefits associated with such, and out of pocket expenses and financial losses.

## V.   STATEMENT OF CLAIM

### COUNT I – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

33. Paragraphs 1-32 are incorporated by reference.

34. Welsh's cancer substantially limits his major life activities of sexual, reproductive, and genitor-urinary functioning. As such, Welsh is a member of a protected class that the ADA was enacted to protect.

35. As Welsh has a medical history of cancer which substantially limits his major life activities of sexual, reproductive, and genitor-urinary functioning he has a record of impairment under ADA.

36. As Meistermatic mistakenly believes that Welsh's cancer substantially limits one of his major life activities, namely obtaining medical insurance through its plan, Welsh is regarded as having an impairment.

37. As Welsh can perform the essential functions of his job of Quality Manager, with or without reasonable accommodation, he is considered a qualified individual with a disability.

38. Meistermatic discriminated against Welsh when it denied him his right to health insurance benefits under the Meistermatic health insurance plan, then retaliated against Welsh by concocting blatantly false allegations in several performance evaluations and employee warnings, "built a file" containing these false allegations so that his claims for unemployment compensation would be denied, then terminated Welsh's employment.

### COUNT II – VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT

39. Paragraphs 1-32 are incorporated by reference.

40. Welsh's cancer substantially limits his major life activities of sexual, reproductive, and genitor-urinary functioning. As such, Welsh is a member of a protected class that the PHRC was enacted to protect.

41.     As Welsh has a medical history of cancer, which substantially limits his major life activities of sexual, reproductive, and genitor-urinary functioning he has a record of impairment under the PHRC.

42.     As Meistermatic mistakenly believes that Welsh's cancer substantially limits one of his major life activities, namely obtaining medical insurance through its plan, Welsh is regarded as having an impairment.

43.     As Welsh can perform the essential functions of his job of Quality Manager, with or without reasonable accommodation, he is considered a qualified individual with a disability.

44.     Meistermatic discriminated against Welsh when it denied him his right to health insurance benefits under the Meistermatic health insurance plan, then retaliated against Welsh by concocting blatantly false allegations in several performance evaluations and employee warnings, "built a file" containing these false allegations so that his claims for unemployment compensation would be denied, then terminated Welsh's employment.

45.     Further, Meistermatic discriminated against Welsh for exercising his right to participate in its medical insurance plan by not permitting him to enter the plan, then retaliated against Welsh by terminating his employment, thus interfering with Welsh's protected rights.

## COUNT III – VIOLATION OF THE EMPLOYMENT RETIREMENT SECURITY ACT OF 1974

46.     Paragraphs 1-32 are incorporated by reference.

47.     Meistermatic discriminated against Welsh for exercising his right to participate in its medical insurance plan by not permitting him to enter the plan, then retaliated against Welsh by terminating his employment, thus interfering with Welsh's protected rights under Section 510 of ERISA, codified in 29 U.S.C. §1140.

## VI. PRAYER FOR RELIEF

WHEREFORE, it is respectfully prayed that this Court:

1. Assume jurisdiction in this case.

2. Order Defendant to restore Plaintiff to his former position as Quality Manager.

3. Order Defendant to reimburse Plaintiff for the loss of income, perquisites, and fringe benefits incurred with applicable interest.

4. Order Defendant to reimburse Plaintiff for all future wages, perquisites, and fringe benefits lost.

5. Order Defendant to reimburse Plaintiff for all compensatory damages, including, but not limited to, wages and benefits Plaintiff would have been entitled to had he achieved his full career advancement potential with Defendant.

6. Allow punitive damages under applicable law.

7. Grant Plaintiff's costs and reasonable attorneys' fees as set forth pursuant to applicable law.

8. Grant any other relief that the Court may deem appropriate.

## VII. JURY TRIAL DEMANDED

Plaintiff demands a jury trial.

Respectfully submitted,

*/s/ Mark J. Bushnell*
Mark J. Bushnell, (PA.I.D. #83792)

BUSHNELL LAW FIRM, P.C.
2915 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219-1826
Phone: (412) 471-5850